UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ANDREW U.D. STRAW,

               Plaintiff,

               -against-

DENTONS US LLP; KEVIN P. McGOFF;
INDIANA UNIVERSITY McKINNEY
SCHOOL OF LAW; PUBLISHER THOMSON
WEST, PUBLISHER OF NORTH EASTERN
REPORTER,

               Defendants.

20-CV-3312 (LLS)

ORDER OF DISMISSAL

---

LOUIS L. STANTON, United States District Judge:

     Plaintiff Andrew U.D. Straw, an attorney appearing *pro se*, brings this action alleging that "language printed against [his] interest in a blog by defendant McGoff (of counsel of defendant Dentons) was in fact retaliation for [his] ADA work and inflicted emotional injuries as well." (ECF No. 1 at 1.). Named as Defendants are Dentons US LLP; Kevin P. McGoff; Indiana University McKinney School of Law (IU McKinney); and Publisher Thomson West, Publisher of North Eastern Reporter.

     Plaintiff filed this complaint without paying the $400.00 filing fees or submitting a completed and signed request to proceed *in forma pauperis* (IFP). By order dated April 29, 2020, the Court directed Plaintiff to pay the filing fees or submit a completed and signed IFP application. (ECF No. 2.) On May 6, 2020, Plaintiff submitted a completed and signed IFP application, and by order dated May 12, 2020, the Court granted Plaintiff's request to proceed IFP. (ECF No. 8.)

## STANDARD OF REVIEW

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

The Supreme Court has held that under Rule 8, a complaint must include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the Court to draw the inference that the defendant is liable for the alleged misconduct. In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Twombly*, 550 U.S. at 555. After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible – not merely possible – that the pleader is entitled to relief. *Id.*

Although the Court is ordinarily obligated to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), because Plaintiff is an attorney, he is not entitled to the special solicitude usually granted to *pro se* litigants, *see Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010) ("[W]here, as here, the plaintiff is an attorney representing himself, he ordinarily "receives no such solicitude at all.").

## BACKGROUND

In 2017, the Indiana Supreme Court suspended Plaintiff from the practice of law in Indiana on the ground that he had violated Indiana Professional Conduct Rule 3.1, "which prohibits bringing a proceeding or asserting an issue therein unless there is a basis in law and fact for doing so that is not frivolous." *In Re Straw*, 68 N.E.3d 1070 (Ind. 2017), *cert. denied sub nom. Straw v. Ind. Supreme Court*, 137 S. Ct. 2309 (2017). Plaintiff was charged with four counts of violating the Indiana disciplinary rule; those charges arose from "frivolous claims and arguments advanced by [Plaintiff] in four lawsuits, three filed on his own behalf and the fourth filed on behalf of a client." 68 N.E.3d at 1071. Plaintiff argued to that court, as he does here, that he was being persecuted for his advocacy on behalf of disabled persons. The court rejected those arguments:

> Further, we categorically reject Respondent's arguments that he is being persecuted for his disability-related advocacy. A necessary corollary of the frivolousness of Respondent's lawsuits is that no relief benefitting the plaintiffs (whether a client or Respondent himself) possibly could have come from those actions. Further, Respondent's actions risked harm to himself and his client in the form of sanctions, and by Respondent's own acknowledgement the relief he sought in Straw v. American Bar Association *et al.* could have led to discrimination against disabled law school faculty. In sum, Respondent does not face discipline for standing up for disabled persons' rights, as he perceives, but rather for having done so incompetently.

*Id.* at 1073; *see also In re Straw*, 720 F. App'x 298, 301 (7th Cir. 2017) ("The Indiana Supreme Court conducted an evidentiary hearing, [and] its finding that Straw made frivolous filings is amply supported.").

Plaintiff brings this complaint against the law firm Dentons US LLP; Kevin P. McGoff, an "of counsel" attorney at Dentons; IU McKinney; and Thomson West, the publisher of the North Eastern Reporter. Plaintiff's claims arise out of (1) a blog entry written by McGoff on Lexology.com, "The Top Ten Ethics Problems for Lawyers," which, in its section on

3

malpractice, included a summary of the disciplinary action against Plaintiff; (2) the Indiana Law Review's "2017 Survey of Indiana Lawyer Discipline Decisions," which included the disciplinary action against Plaintiff; and (3) the North Eastern Reporter's publication of the decision *In Re Straw*, 68 N.E.3d 1070 (Ind. 2/14/2017).

### A.   Plaintiff's allegations against McGoff

Plaintiff argues that "[t]his 'Top 10' serves to ridicule lawyers who were disciplined," and in support of this assertion, he quotes the introduction to the blog:

> One important disclaimer: This work identifies *our* categorization of the **top ten ways in which lawyers get themselves sanctions. That does not mean these are the only ways lawyers get themselves sanctioned.** There are, of course, other ways in which lawyers face both disciplinary action and civil liability. In fact, lawyers often find new ethical problems, either intentionally or unintentionally, that cause legal problems for them personally.

(*Id.* at ¶ 29 (emphasis in Plaintiff's complaint).) Plaintiff also quotes the blog's summary of his case:

> *In Matter of Straw*, 68 N.E.3d 1070 (Ind. 2017), **Respondent advanced a series of frivolous claims and arguments in four lawsuits, three of which were filed on his own behalf.** The first suit was a defamation suit where opposing counsel sought **information** from Respondent and in response, Respondent sued opposing counsel in federal court, alleging racketeering activity and seeking $15,000,000 in damages and injunctive relief. The second suit was in federal court against the ABA and 50 law schools, alleging violations of the Americans with Disabilities Act ("ADA"), which was dismissed for lack of standing. Respondent lost the third suit, an employment discrimination claim, because he let the statute of limitations lapse without filing. The fourth case was a post-dissolution proceeding where Respondent filed suit alleging defendants had violated the ADA by discriminating against the former husband, which was dismissed. The Court held that a suspension for a period of 180 days, without automatic reinstatement, was warranted for Respondent's misconduct.

(*Id.* at ¶ 31 (emphasis in Plaintiff's complaint).)

Plaintiff argues, "I didn't lose anything"; "none of my cases were frivolous and use of the word frivolous was part of a scheme of collusion between my former employer ['a Title II entity'], the Indiana Supreme Court, and other courts." (*Id.* at ¶¶ 32, 35, 42.) McGoff's "only

4

source was the Indiana attack made against me after I made an ADA complaint about the Indiana Supreme Court." McGoff should "have mentioned my federal lawsuit to stop this vicious attack against me," as well as "the cheating that went on, with the 7th Circuit hiring my hearing officer from Indiana WHILE HE WAS MY APPELLEE," and "that the disciplinary complaint was made by the **ADA coordinator** in immediate retaliation against my own ADA complaint in 2014 against her very same employer." (*Id.* at ¶ 38 (emphasis Plaintiff's).)

The "language [Plaintiff] object[s] to in this blog entry concerns [his] bogus Indiana Supreme Court discipline." (*Id.* ¶ 45.) For these reasons, Plaintiff "must have justice against Attorney McGoff and his firm, who don't know what they are talking about and published very hurtful and painful things against [him] without even asking [him] what happened or [his] side." (*Id.* at ¶ 88.)

B.     **Plaintiff's allegations against IU McKinney and Thomson West**

Plaintiff's claims against IU McKinney and Thomson West arise out of similar facts – both of these Defendants reported about the disciplinary case against Plaintiff. It appears that Thomson West did nothing more than publish the Indiana Supreme Court's decision in the North Eastern Reporter, but according to Plaintiff, the "Northeast Reporter is published by a private publishing company called Thomson West and even if the Indiana Supreme Court and its judges are immune … repeating rubbish that otherwise would be IIED or defamation or an ADA violation does not insulate the private publisher from paying damages in collusion with a state entity." (*Id.* ¶ 89.)

As for IU McKinney, when it "published an attack on me by the executive director of the Indiana Attorney Disciplinary Commission, Mr. Michael Witte, this was also an ADA Titles II & V retaliation," and IU McKinney "was fully aware that it was publishing on the Internet and seeking maximum coverage all over the country, including New York." (*Id.* at ¶¶ 91, 93.)

5

## DISCUSSION

Plaintiff includes two "counts" in his complaint. The first is "ADA Title V," the ADA's anti-retaliation provision, 42 U.S.C. § 12203.[1] The second is for intentional infliction of emotional distress.

Plaintiff also seeks a "declaratory judgment that even though [his] 2014 ADA case against the ABA was dismissed, it was not frivolous and neither were the others." (*Id.* at ¶ 121.) Plaintiff states that "[s]ince he is a public figure, [he is] limited in [his] ability to demand relief for defamation. (*Id.* at ¶ 102.)

One week before Plaintiff filed this action, he filed an action asserting similar claims against Wolters Kluwer United States, Inc., Lisa G. Lerman, Philip G. Shrag, and Robert Rubison. *See Straw v. Wolters Kluwers United States, Inc.*, ECF 1:20-CV-3251, 7 (S.D.N.Y. May 1, 2020) (dismissing action for failure to state a claim).

### A.   Retaliation Claims Under the Americans with Disabilities Act

Plaintiff's claims against Defendants relies on a long chain of causation. He argues that he "had a right to file that 2014 ABA lawsuit and the others motivating the discipline." (ECF 1 at ¶ 94 (emphasis omitted).) Indiana's "attack on this lawsuit was retaliation against it." (*Id.*) Indiana's disciplinary complaint was also retaliation. (*Id.* at ¶ 95.) And therefore, Defendants' act of "[r]epublishing the vicious attacks of my former employer and a disloyal ADA coordinator and saying 'I should have known better' amount[s] to additional retaliation and collusion with that state supreme court." (*Id.* at ¶ 99 (emphasis omitted).)

---

[1] Plaintiff refers to Title II of the ADA as well, but apparently only to argue that its provision for damages should be read to apply to an action under Title V. (ECF 1 at ¶ 99 ("Since Title II of the ADA allows for damages, so does a collusion with a Title II entity under **Title V**." (emphasis Plaintiff's).)

The antiretaliation provision of the ADA provides: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a).

To state a claim for retaliation under the ADA, a plaintiff must show: "(i) [the] plaintiff was engaged in protected activity; (ii) the alleged retaliator knew that plaintiff was involved in protected activity; (iii) an adverse decision or course of action was taken against plaintiff; and (iv) a causal connection exists between the protected activity and the adverse action." *Weixel v. Bd. of Educ. of N.Y.*, 287 F.3d 138, 148-49 (2d Cir. 2002) (citations omitted).

Plaintiff argues that the ADA antiretaliation provision applies broadly "to any individual or entity that seeks to prevent an individual from exercising his or her rights or to retaliate against him or her for having exercised those rights," and that any "form of retaliation or coercion, including threats, intimidation, or interference, is prohibited if it interferes with the exercise of rights under the Act." (ECF 1 at ¶ 98 (quoting https://www.ada.gov/taman2.html#II-3.11000).) But the statute does not apply as broadly as Plaintiff claims. For one thing, the Second Circuit has held that the retaliation provision of the ADA, like the rest of the ADA, does not provide for individual liability. *Spiegel v. Schulmann*, 604 F.3d 72, 79 (2d Cir. 2010). For this reason, Plaintiff's ADA claim or claims against McGoff must be dismissed.

Even assuming that Thompson West or IU McKinney – which Plaintiff sues as publishers, not as employers, public entities, or any other "covered entities" as defined by the ADA – could be liable to Plaintiff under the ADA, Plaintiff fails to allege facts that would establish the elements of a retaliation claim.

7

Generally, "any activity designed 'to resist or antagonize . . . ; to contend against; to confront; resist; [or] withstand' discrimination prohibited by Title VII constitutes a protected oppositional activity." *Littlejohn v. City of New York*, 795 F.3d 297, 317 (2d Cir. 2015) (quoting *Crawford v. Metropolitan Government of Nashville & Davidson Cnty.*, 555 U.S. 271, 276 (2009)). A lawsuit intended to eradicate discrimination thus ordinarily constitutes protected activity, even if the suit is unsuccessful, but only if the plaintiff "can establish that he possessed a good faith, reasonable belief that the underlying challenged actions … violated th[e] law." *Weissman v. Dawn Joy Fashions, Inc.*, 214 F.3d 224, 234 (2d Cir. 2000) (internal quotation marks and quotation omitted).

Here, it is questionable whether Plaintiff can establish that his lawsuits constituted protected activity, since at least two courts – the Indiana Supreme Court and the Seventh Circuit Court of Appeals – have already held that Plaintiff's lawsuits did not have a good-faith basis, and therefore warranted the disciplinary action taken against him. *See In Re Straw*, 68 N.E.3d 1070 (Ind. Feb. 14, 2017) ("[W]e categorically reject Respondent's arguments that he is being persecuted for his disability-related advocacy. A necessary corollary of the frivolousness of Respondent's lawsuits is that no relief benefitting the plaintiffs (whether a client or Respondent himself) possibly could have come from those actions."); *see also In re Straw*, 720 F. App'x 298, 301 (7th Cir. 2017) ("The Indiana Supreme Court conducted an evidentiary hearing, [and] its finding that Straw made frivolous filings is amply supported.").

In any event, Plaintiff cannot satisfy the remaining elements of a retaliation claim, because Thomson West's publication in a book (a regional reporter of state-court rulings and opinions) of a decision of the Indiana Supreme Court cannot constitute prohibited adverse action, and nor can the other Defendants' authoring or publication of commentary, whether in a blog

post or law review or elsewhere, about that decision. In any event, there is no indication that the authors or publishers were motivated by any animus against Plaintiff.

For these reasons, Plaintiff fails to state a claim that any Defendant retaliated against him in violation of his rights under the ADA.

**B.     Intentional Infliction of Emotional Distress**

A district court may decline to exercise supplemental jurisdiction over state-law claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Generally, "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction." *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)). Here, the Court has dismissed the federal claims over which the Court has original jurisdiction.

It is unclear, however, whether Plaintiff might be able to invoke the Court's diversity jurisdiction with respect to his state-law claim of intentional infliction of emotional distress. Plaintiff seems to allege that he is a United States citizen domiciled in the Philippines (ECF No. 2 at ¶ 1) ("My residence is in the Philippines now"), though he provides a mailing address for himself in Washington, D.C. Defendant Denton US LLP is a global legal practice providing client services worldwide,[2] and Defendant Thomson Reuters is headquartered in Toronto with major operations in London and Eagan, Minnesota.[3] Plaintiff has not pleaded any facts about where Defendant Kevin P. McGoff resides. *But see Jaser v. New York Prop. Ins. Underwriting Ass'n*, 815 F.2d 240, 243 (2d Cir. 1987) (holding that generally a district court should allow a plaintiff "to drop dispensable nondiverse defendants whose presence would defeat diversity of

---

[2] *See* https://www.dentons.com/en/legal-notices.

[3] *See* https://legal.thomsonreuters.com/en/about.

9

citizenship."). Because Plaintiff might be able to invoke the Court's diversity jurisdiction, the Court addresses Plaintiff's state law claim.

Plaintiff brings his claims for intentional infliction of emotional distress under New York law (ECF No. 2 at ¶ 105), and the Court assumes that the law of the forum state applies. In New York, "[t]he state law tort of intentional infliction of emotional distress has four elements: (1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996) (citing *Howell v. New York Post Co.*, 81 N.Y.2d 115, 121 (1993)). The requirements to satisfy the tort are "stringent." *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999).

Plaintiff's allegations that information about his disciplinary proceedings was published do not involve "extreme and outrageous conduct." *Bender*, 78 F.3d at 790. Moreover, the full decision in that disciplinary matter is already a matter of public record and is available in publicly accessible case law databases. Plaintiff's allegations that Defendants reprinted information about his suspension therefore do not state a claim for intentional infliction of emotional distress, and the Court dismisses these allegations for failure to state a claim on which relief can be granted.

C.     **The First Amendment**

Because Plaintiff seeks to hold Defendants liable based on their having published a court decision and commentary about that decision, Plaintiff's claims raise issues under the First Amendment. "[S]peech is of public concern when it can 'be fairly considered as relating to any matter of political, social, or other concern to the community,' or when it "is a subject of general interest and of value and concern to the public," *Id.* (citations omitted). A state supreme court decision is certainly a matter of public concern, and attorney disciplinary proceedings are as

well. *See Bartnicki v. Vopper*, 532 U.S. 514, 527–28 (2001) ("Where a publisher obtains truthful information about a matter of public significance then state officials may not constitutionally punish publication of the information, absent a need . . . of the highest order."); Westmoreland v. Columbia Broad. Sys., Inc., 752 F.2d 16, 23 (2d Cir.1984) ("[T]he First Amendment does secure to the public and to the press a right of access to civil proceedings."); Joy v. North, 692 F.2d 880, 893 (2d Cir.1982) ("An adjudication is a formal act of government, the basis of which should, absent exceptional circumstances, be subject to public scrutiny.").

The Court also notes that "the Free Speech Clause of the First Amendment can serve as a defense in state tort suits, including suits for intentional infliction of emotional distress." *Snyder v. Phelps*, 131 S. Ct. 1207, 1211 (2011) (relying on *Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46, 50–51 (1988)); *see also Cohen v. Cowles Media Co.,* 501 U.S. 663, 676 n. 4 (1991) (Blackmun, J., dissenting) ("[W]e have long held that the imposition of civil liability based on protected expression constitutes 'punishment' of speech for First Amendment purposes.").

The Court cannot punish or hold Defendants liable merely for publishing a summary of Plaintiff's disciplinary action and their commentary about that decision. Because Defendants' actions constitute speech on a matter of public concern, the First Amendment is a defense to any liability.

**D.   No Jurisdiction to Review State Court Decisions**

To the extent that Plaintiff brings this action as an attempt to have this Court review the Indiana Supreme Court's characterization of his ADA suit against the American Bar Association as frivolous and his suspension from the practice of law for violations of Indiana Professional Conduct Rules in *In Re Straw*, 68 N.E.3d 1070 (Ind. Feb. 14, 2017), this Court cannot grant Plaintiff the relief he seeks.

Federal district courts lack authority to review state court judgments. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.,* 544 U.S. 280, 284 (2005) ("28 U.S.C. § 1331 is a grant of original jurisdiction, and does not authorize district courts to exercise appellate jurisdiction over state-court judgments."); *McKithen v. Brown*, 481 F.3d 89, 96 (2d Cir. 2007) (federal district courts cannot "exercise appellate jurisdiction over state-court judgments").

Plaintiff seeks a "declaratory judgment that even though [his] 2014 ADA case against the ABA was dismissed, it was not frivolous and neither were the others." (*Id.* at ¶ 121.). Plaintiff seeks a declaration that the Indiana Supreme Court's suspension decision was wrong. Because this Court lacks jurisdiction to review or overturn a judgment of the Indiana Supreme Court, the Court dismisses this claim.

The Court also notes that other courts have already advised Plaintiff that he cannot pursue such relief. *See In re Straw*, 720 F. App'x 298 (Straw "principally attacks the Indiana Supreme Court's decision to impose discipline. We do not have jurisdiction to consider these objections because only the United States Supreme Court may review attacks on state-court judgments . . . *See D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *Johnson v. Supreme Court of Illinois*, 165 F.3d 1140, 1141–42 (7th Cir. 1999).").

## CONCLUSION

The Clerk of Court is directed to mail a copy of this order to Plaintiff and note service on the docket. Plaintiff's complaint, filed IFP under 28 U.S.C. § 1915(a)(1), is dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

Plaintiff's "Motion for U.S. Marshal Service of Summons and Complaint" (ECF No. 5) is denied as moot.

All other requests are denied as moot.

Chambers will mail a copy of this order to Plaintiff and note service on the docket.

SO ORDERED.

Dated:   June 11, 2020
         New York, New York

                                            *Louis L. Stanton*
                                            ───────────────────
                                              Louis L. Stanton
                                                  U.S.D.J.